UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WILLIE KINNION,

                Plaintiff,

       -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-----------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**
17-CV-06455 (AMD)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 26 2019 ★

BROOKLYN OFFICE

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff seeks review of the Social Security Commissioner's decision after a hearing before Administrative Law Judge ("ALJ") Lori Romeo that he was not entitled to disability insurance benefits under Title II of the Social Security Act. (Tr. 9-20.) For the reasons that follow, I deny the Commissioner's motion for judgment on the pleadings and remand the case for further proceedings.

The 52-year-old plaintiff applied for SSDI benefits on December 28, 2012, alleging disability as of May 21, 2012. (Tr. 12,15.) After his claim was denied, the plaintiff filed a written request for a hearing pursuant to 20 C.F.R. § 404.929. (Tr. 12.) His request was granted and he testified before ALJ Romeo without a lawyer. (*Id.*; Tr. 42-71.) Vocational expert Pat Green submitted her opinion in the form of answers to written interrogatories on the number of jobs in the national economy that the plaintiff could perform. (Tr. 393-99.) On August 25, 2016, ALJ Romeo denied the plaintiff's claim for benefits. (Tr. 13-20.) She concluded that the plaintiff had severe impairments—blindness in one eye, headaches, and a history of substance abuse—but that he was not "under a disability within the meaning of the Social Security Act."

1

(*Id.*) She also found that he had the residual functional capacity ("RFC") to perform a full range of work "at all exertional levels," with some limitations related to his eyesight. (Tr. 13-15.) The Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final decision. (Tr. 1-3.)

The plaintiff alleged that he was entitled to receive disability insurance benefits for the following disabilities: low back pain; blindness in his left eye; surgeries from 2000 to his abdomen, left leg, and face; tendonitis; myalgia; muscle spasm; abscess; and arthritis. (ECF No. 1.) On July 16, 2018, the defendant moved for a judgment on the pleadings. (ECF No. 12.) On August 28, 2018, the plaintiff filed additional medical records,[1] but did not address the defendant's motion. (ECF No. 15.) I gave the plaintiff additional opportunities to respond to the defendant's submission and advised him that I would consider the motion fully briefed if he did not file a response. The plaintiff did not reply, so I deem the motion fully submitted.

## DISCUSSION

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The Court must uphold the Commissioner's factual findings if there is substantial evidence in the record to support them. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court must defer to the Commissioner's factual findings when

---

[1] These additional medical records are dated after the ALJ's decision, and after the relevant period. (ECF No. 15-1.) I do not consider them on this motion.

they are "supported by substantial evidence," but will not defer "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188–89 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (internal citations omitted). Thus, "[e]ven if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (quoting *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).

In October 2000, the plaintiff was injured in a car accident, and spent a month in the hospital. (Tr. 491.) He had multiple surgeries to repair injuries to his abdomen, including a bowel resection, partial colectomy, skin grafts, and the permanent placement of mesh to close his abdomen. (Tr. 491-92.) He also had surgery to attempt to repair the damage to his left eye, but was left permanently blind in that eye. (*Id.*) In the years following the accident and surgeries, the plaintiff worked in construction. (Tr. 18, 56-57.) The plaintiff stopped working in 2012, and since that time, has reported abdominal pain and frequent cluster headaches. (*e.g.*, Tr. 422, 458-78.) One of the plaintiff's doctors, Dr. Karibandi, noted that the plaintiff had pain in his leg and hand as a result of multiple gunshot wounds sometime before July 2012. (Tr. 422.)

ALJ Romeo considered three impairments: 2.02 (loss of vision), 11.00 (neurological), and 12.09 (substance addition disorders),[2] and found them to be "severe." (Tr. 15.) However, she found that the plaintiff's severe impairments or combination of impairments did not meet or

---

[2] The record on the plaintiff's substance use history is not conclusive. The plaintiff did not cite a history of substance use in his claim to the SSA, nor is there significant medical history documenting abuse. Dr. Karibandi's July 2012 treatment notes reflect that the plaintiff was "snorting heroin on and off which relieves his pain somewhat," (Tr. 422, 431), which is consistent with the plaintiff's testimony that he "sniffed heroin to relieve the pain." (Tr. 62-63.) However, the plaintiff denied that he had a habit. (Tr. 63: "I didn't have a habit. I talked to [the doctor] about it. It didn't even work for the pain, but he was telling me to take Tylenol.").

3

medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15.) ALJ Romeo also concluded that the plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," with certain limitations related only to his eyesight. (*Id.*)

*The Treating Physician Rule*

ALJ Romeo assigned little weight to the opinions of the plaintiff's treating physicians, Dr. Sardar and Dr. Ravi, who concluded that the plaintiff had multiple physical limitations that would affect his ability to sit or stand during the workday. (Tr. 16-17, 458-78.) In contrast, ALJ Romeo gave great weight to consultative expert Dr. Tranese, who concluded that the plaintiff had "no physical functional deficits," and Dr. Weinberg, who noted that while the plaintiff was blind in his left eye, he had perfect vision in his right eye. (Tr. 16-18.)

It is well settled that the "treating physician" rule requires that "the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record." *Corporan v. Comm'r of Soc. Sec.*, No. 12–CV–6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017).[3] When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must "comprehensively set forth his [or her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (internal citations omitted); 20 C.F.R. § 404.1527(d)(2). Key factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion

---

[3] The treating physician rule applies because the plaintiff filed his claim before March 27, 2017. 20 C.F.R. § 404.1527.

4

with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other facts brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir. 2004). Failure to provide "good reasons" for the weight assigned to a treating physician's opinion constitutes grounds for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion."); *Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017).

The ALJ decided to give "little weight" to Dr. Sardar because she did not have his treatment notes, despite making multiple requests for them; the only record from Dr. Sardar was the Disability Questionnaire he completed for the plaintiff in May 2014. (Tr. 16-17, 458.) The ALJ said it was "unclear how many times [Dr. Sardar] treated the claimant" and that he "based his opinion on his own written MRI reports," rather than on a radiologist's report. (Tr. 16.) While the ALJ did not have Dr. Sardar's records, the questionnaire includes treatment information; it says that Dr. Sardar first examined the plaintiff on March 8, 2013, last examined him on May 16, 2014, and the frequency of treatment was "monthly." (Tr. 458.) The fact that Dr. Sardar interpreted the plaintiff's MRIs without a radiologist's report is not a "good reason" to discount Dr. Sardar's medical opinion. *See Fontanez*, 2017 WL 4334127, at *18 (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand") (internal citations omitted); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Said v. Colvin*, No. 14-CV-03514, 2016 WL 8671843, at *12 (E.D.N.Y. Sept. 30, 2016). Given the circumstances of this case, including the plaintiff's multiple ailments and the fact that he was not represented by counsel, remand is appropriate so that the ALJ can make another attempt to

get the doctor's treatment notes and have a complete record on which to evaluate Dr. Sardar's conclusions. *See Shaw,* 221 F.3d at 131 (The ALJ should "develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." (internal citations omitted)); *see also Said,* 2016 WL 8671843, at *12 ("[I]f an ALJ believes that a treating physician's opinion lacks support or is inconsistent, the ALJ may not discredit that opinion without affirmatively seeking out clarifying information from the treating physician.").

ALJ Romeo also gave "little weight" to Dr. Ravi's opinion on the ground that the plaintiff "provided misinformation" to Dr. Ravi about his drug use and the extent to which he relied on his cane. (Tr. 17-18.) The ALJ found "no evidence of treatment for a leg condition in [the] record," and cited the plaintiff's hearing testimony that he had been using the cane for 15 years. (Tr. 18.) On the other hand, Dr. Sardar's Questionnaire reflects multiple diagnoses related to the plaintiff's leg—osteoarthrosis in his knee, chronic pain syndrome, muscle spasms, and sacroiliac pain—as well as opinions about the plaintiff's limited ability to sit, stand and walk during workdays. (Tr. 458, 460-61.) Dr. Sardar noted that the plaintiff's "constant" pain would interfere with his attention and concentration while at work. (Tr. 462.) Dr. Ravi concluded, after examining the plaintiff, that the plaintiff could "squat 5% of maximum," and that a cane was "medically necessary" for the plaintiff to stand, and "for pain, weightbearing, and balance." (Tr. 468.) Under these circumstances, remand is necessary so that the ALJ can reevaluate the record. *See Halloran,* 362 F.3d at 33; *Fontanez,* 2017 WL 4334127, at *18.

*The RFC Determination*

The ALJ determined that the plaintiff could perform a "full range of work at all exertional levels." (Tr. 19-20.) Given the record noted above, the ALJ should consider the

6

extent to which the combination of the plaintiff's impairments affects his RFC. (Tr. 15). In assessing a claimant's RFC, the ALJ must evaluate the "combined impact on a claimant's ability to work, regardless of whether every impairment is severe." *Dixon v. Shalala,* 54 F.3d 1019, 1031 (2d Cir. 1995); *accord Johnston v. Astrue,* No. 07-CV-5089, 2008 WL 4224059, at *9 (E.D.N.Y. Sept. 8, 2008) ("the ALJ is required to consider all of plaintiff's impairments regardless of their severity" (citing 20 C.F.R. § 404.1545(a)(2))). It is not clear whether ALJ Romeo considered the extent to which the plaintiff's chronic pain from his abdominal surgeries, back pain or leg pain met or medically equaled a listing. Remand is necessary so that the ALJ can consider these conditions and "the combined effect of all... impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity...." *Duncan v. Astrue,* No. 09-CV-4462, 2011 WL 1748549, at *22 (E.D.N.Y. May 6, 2011) (quoting *Burgin v. Astrue,* 348 F. App'x 646, 647–48 (2d Cir. 2009)); *Hernandez v. Astrue,* 814 F. Supp. 2d 168, 185 (E.D.N.Y. 2011) ("The ALJ's failure to consider the effects of plaintiff's combined impairments in every step of the five-step sequential process... requires remand.").

Finally, the ALJ should reevaluate the opinion of the vocational expert, Pat Green. In her first hypothetical, the ALJ asked Ms. Green to assume an individual that has the RFC to perform "a full range of work at all exertional levels" and is blind in one eye; Ms. Green said the individual could work as a hand packager, assembler of small products, or a garment sorter. (Tr. 395-96.) In a second hypothetical, the ALJ asked Ms. Green to assume an individual who has the RFC to perform "light work," walks with a cane, does not have full use of his right hand, and is blind in one eye; Ms. Green opined that there were no jobs in the national economy for that individual. (Tr. 397-98.) ALJ Romeo included only the response to her first interrogatory in her

written decision. (Tr. 19-20.) After considering the effect of all of the plaintiff's impairments on his RFC, the ALJ should reconsider the vocational expert's opinion.

## CONCLUSION

The defendant's motion for judgment on the pleadings is denied, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                                      s/Ann M. Donnelly

                                                                      Ann M. Donnelly
                                                                      United States District Judge

Dated: Brooklyn, New York
       February 27, 2019